IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL NO:  4:09-cv-00062 JAJ-CFB |
| vs. | ) | |
| | ) | |
| HOWARD MUSIN, | ) | |
| JILL SCHWARTZ-MUSIN, | ) | REPORT & RECOMMENDATION |
| SSC SERVICES, INC., | ) | ON MOTION FOR PRELIMINARY |
| M_S SERVICES, INC., | ) | INJUNCTION |
| SCHWARTZ'S SYSTEMS | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

This matter came before the Court on Plaintiff United States of America's Motion for

Preliminary Injunction (Clerk's No. 2, filed February 13, 2009).  This matter was referred to the

undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).  Hearing on

the Motion was first set for March 13, 2009, and then on Defendants' Resisted Motion, it was

continued to April 28, 2009, to allow Defendants additional time to prepare.  A hearing on the

Motion for Preliminary Injunction was held April 28-30, 2009.  Appearing at the hearing were

Robert Fay, Ann Reid, Ronald Mountsier and Jan Morfeld Kramer. Post-trial briefs were filed on

June 5, 2009, by the Government (Clerk's No. 53) and July 10, 2009, by Defendants (Clerk's

No. 57).  Counsel's efforts to organize submission of this matter, including their willingness to

insert in their post-trial briefs hyperlinks to relevant exhibits is appreciated, and makes review

more efficient.  The Motion for Preliminary Injunction is now fully submitted.

Defendants' Counterclaims have been severed, and set for trial separately.   A bench trial

on the issues that are the subject of the Motion for Preliminary Injunction is set for February 8,

2010.

1

## INJUNCTIVE RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 65, and the Internal Revenue Code, 26 U.S.C. §§ 7402, 7407 and 7408, the Government seeks preliminary injunctive relief against Defendants, who are tax preparers and tax advisors for individuals and business entities. Section 7407 provides for injunctive relief against a tax return preparer who has engaged in conduct subject to penalty under 26 U.S.C. § 6694 (penalizing tax preparers for preparing a federal income tax return or refund claim that contains an understatement of liability due to an unreasonable position the preparer knew about, or should have known about, or due to the preparer's willful or reckless conduct) or § 6695 (providing for various penalties against income tax preparers, including penalties for not complying with regulations relating to signing returns or refund claims). The Government claims Defendants violated, and continue to violate, §§ 6694 and 6695. Section 7408 provides for injunctive relief against a person who has engaged in conduct in violation of § 6701 (imposing penalties for knowingly aiding and abetting understatement of federal tax liability through a preparation of a return, claim, or other document), which the Government alleges Defendants violated and continue to violate. Section 7402 provides federal district courts with the authority to issue injunctions in civil actions, "as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402. The Government alleges that Defendants' violations include understating taxpayer's liabilities by taking positions on expenses or deductions for which there is no realistic possibility of being sustained on the merits, disregarding IRS rules and regulations, undermining the public confidence in the fairness of the federal tax system, encouraging noncompliance with Internal Revenue laws, and engaging in fraudulent and deceptive conduct that substantially interferes with proper administration of the Internal Revenue laws.

2

The Government asks that all Defendants, and specifically that Howard Musin and Jill Schwartz-Musin (individually or under any name or form of business) be enjoined from directly or indirectly preparing, filing, assisting in the preparation or filing of federal tax returns and related documents for anyone other than themselves, and that they should be prohibited from directly or indirectly representing clients before the Internal Revenue Service.  Additionally, the Government asks that Defendants, under their own names, or any other names, be enjoined from preparing or assisting in the preparation or filing of documents relating to Internal Revenue laws. Pursuant to 26 U. S. C. § 7402(a), the Government also requests that Defendants be ordered to contact all persons for whom they prepared or assisted in preparing federal tax returns after January 1, 2004, to advise their clients that an injunction has been entered, and that the Government may seek additional taxes, interest and penalties against these clients, and that the Court should order that a copy of any injunction be posted at the entrance of Defendants' business in plain view of all customers.  In essence, the Government wants Defendants to cease doing business as tax preparers and advisors.

Defendants deny that they, individually or through any of their business entities, have violated 26 U. S. C. §§ 6694, 6695 and/or 6701.

**A.  Purpose, Burden**

A court's purpose in issuing a preliminary injunction "is to preserve the status quo and to prevent irreparable harm until the parties have a chance to conduct discovery and the court has an opportunity to hold more extensive hearings on the lawsuit's merits." *Reynolds v. Rehabcare Group E. Inc.,* 531 F. Supp. 2d 1050, 1056 (S.D. Iowa 2008) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir.1994)).  A court may, under Federal Rule of Civil Procedure 65, issue a preliminary

3

injunction where appropriate. *See* Fed. R. Civ. P. 65(a). A party is entitled to equitable relief only if no adequate remedy at law exists. *Reynolds*, F. Supp. 2d at 1056 (citing *Taylor Corp. v. Seasons Greetings, LLC*, 403 F.3d 958, 967 (8th Cir. 2005)).

The movant bears the burden of establishing the propriety of a preliminary injunction. *Id.* (citing *Baker Elec. Coop., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir.1994)). The movant bears a heavy burden particularly where, as in this case, "granting the preliminary injunction will give [the movant] substantially the relief it would obtain after a trial on the merits." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998) (quoting *Sanborn Mfg. Co.*, *Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 485-86 (8th Cir. 1993)), *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724, 736 (8th Cir. 2008) (stating a preliminary injunction "should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion" and presents proof even more substantial than that required on a motion for summary judgment") (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (per curiam)).

"A preliminary injunction is "an extraordinary form of relief and must be carefully considered." *Reynolds*, 531 F. Supp. 2d at 1056 (citing *Calvin Klein Cosmetics, Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 667 (8th Cir.1987)). The power that district courts have to grant a preliminary injunction is "an awesome power," because it "expedites the trial process and forces discovery to be completed within a limited time frame." *Id.*

**B. Standard for Analysis**

The parties dispute whether, because §§ 7407 and 7408 explicitly authorize injunctive relief, the Court must consider the traditional equitable factors as set forth in *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981), in analyzing the request for preliminary

injunctive relief.  The Government argues that, rather than applying the *Dataphase* standard, the

Court should apply the following factors analyzed by the Court of Appeals for the Seventh

Circuit in reviewing the granting of a permanent injunction:

> In order to determine whether there is a significant likelihood that the
> appellants' involvement in the illegal activity at issue in this case will
> reoccur, we examine the totality of the circumstances surrounding the
> appellants and their violation of the law. . . . We look at factors such as:
> (1) the gravity of harm caused by the offense; (2) the extent of the
> defendant's participation and his degree of scienter; (3) the isolated or
> recurrent nature of the infraction and the likelihood that the defendant's
> customary business activities might again involve him in such transaction;
> (4) the defendant's recognition of his own culpability; and (5) the sincerity
> of his assurances against future violations.

*United States v. Raymond*, 288 F.3d 804, 813 (7th Cir. 2000) (internal quotations and citations

omitted).  The Court finds the Government's argument unpersuasive.  In analyzing whether

preliminary injunctive relief is appropriate under §§ 7402, 7407 and 7408, the Court will

consider both statutory factors and the traditional equitable factors concerning injunctive relief

as set forth in *Dataphase*, 640 F.2d 109.  *See United States v. White*, 769 F.2d 511, 515 (8th Cir.

1985) (affirming district court's granting of government's motion for permanent injunctive relief

under § 7408, where district court consolidated the hearing for preliminary injunctive relief and

trial on the merits; noting, "In addition, the district court specifically found, as noted above, that

each of the four prerequisites for granting injunctive relief was satisfied in the present case.  *E.g.,*

*Dataphase Systems . . .*"); *United States v. Sonibare and Liberty Financial Group*, 504 F.

Supp. 2d 566, 573 n.2 (D. Minn. 2007) (in analyzing issuance of permanent injunction, stating

court may issue an injunction without applying traditional equitable factors if statute expressly

authorizes the injunction, but noting the court had analyzed traditional equitable factors

delineated in *Dataphase* in its previous order on motion for a temporary restraining order under

§§ 7407 and 7408 of the Internal Revenue Code); *Abdo v. U.S. IRS*, 234 F. Supp. 2d 553, 564 n.9

(M.D.N.C. 2002) (citing *White*, 769 F.2d 511, and noting that court had applied traditional

equitable prerequisites in entering its preliminary injunction against conduct prohibited under

§§ 7407 and 7408); *see also Reynolds*, 531 F. Supp. 2d at 1056 ("In this Circuit, the four-part

test enunciated in *Dataphase* . . . is applied to determine if preliminary injunctive relief is

appropriate;" denying request for preliminary injunctive relief, where employment statute

explicitly permitted injunctive relief) (citing *Int'l Ass'n of Machinists and Aerospace Workers v.

Schimmel*, 128 F.3d 689, 692 (8th Cir. 1997); *United States v. Zerjav*, No. 4:08CV00207 ERW,

2009 WL 912821, at *29 (E.D. Mo. Mar. 31, 2009) (concluding that *Dataphase* factors were

relevant to the Court's determination of whether preliminary injunctive relief was appropriate

under §§ 7407 and 7408, as well as under § 7402).

        In applying the *Dataphase* test to determine whether to issue a preliminary injunction, a

court considers the following factors:  (1) the threat of irreparable harm to the movant if the

court does not issue a preliminary injunction; (2) the state of the balance between this harm to

the movant and the injury that granting the injunction would afflict on the other parties in the

case; (3) the likelihood that the movant will succeed on the merits of the case; and (4) the public

interest.  *PCTV Gold, Inc. v. Speednet, LLC*, 508 F.3d 1137, 1143 (8th Cir. 2007) (quoting

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)).

## FINDINGS OF FACT AND ANALYSIS

        As discussed in Defendants' post-trial brief (Clerk's No. 57, at 1 –10) , the Government's

claims have changed over the course of developing the record for the Motion for Preliminary

Injunction, based on review of the evidence in preparation for the hearing, and on receipt of

supplemental information.  The Court will rely only upon the exhibits introduced at the hearing,

and not on the broader claims included in the documents filed with the Complaint (Clerk's

No. 1) or new claims that are raised for the first time in the Government's Post-hearing brief

(Clerk's No. 53).  Pursuant to Federal Rule of Civil Procedure 65, the Court has relied upon the

affidavits and declarations submitted by the Government, and will give them appropriate weight,

considering the hearsay limitations they present.

Defendants specialize in preparing federal income tax returns for home-based businesses,

such as Shaklee, Mary Kay, and Arbonne distributors.  Defendants Howard Musin and Jill

Schwartz-Musin prepare returns as individuals and through the corporate Defendants.  Howard

Musin is an enrolled agent, and represents clients before the IRS.  He has prepared and filed

returns as an agent or employee of Defendants Schwartz Systems Corporation, M_S Services,

Inc., and SSC Services, Inc.  He is the sole owner and President of M_S Services and the

President of SSC Services.

Jill Schwartz-Musin formerly worked at the IRS, and is an accountant, but has not

completed the CPA (Certified Public Accountant) exam process.  In 1982 she began preparing

tax returns for others, incorporating her business as Defendant Schwartz's Systems, Inc., which

did business until 2005 or 2006.  Schwartz-Musin was President of Schwartz's Systems and her

three children were shareholders.  After 1998, Schwartz's Systems offered business consultant

services.  In 1987, the IRS barred Schwartz-Musin from representing clients before the IRS,

because the IRS found that Schwartz-Musin was identifying herself as a Certified Public

Accountant; Ms. Schwartz-Musin alleges that by using the initials CPA, she meant "current

power of attorney."  Between 2001 and 2003, on eight separate occasions, Schwartz-Musin

submitted to the IRS an IRS Form 2848 "Power of Attorney and Declaration of Representative"

on behalf of clients for whom she prepared returns.  On these forms, Schwartz-Musin either

identified herself under category (b), as a Certified Public Accountant, or category (h), an unenrolled return preparer; this indication was made by a handwritten letter, not by checking a specific box on a form.  The Government maintains that Schwartz-Musin was deliberately intending to deceive the IRS by representing herself as a CPA in violation of the 1987 IRS order barring her from representing taxpayers in disputes with the IRS.  Schwartz-Musin maintains that her handwriting is such that the "h" which she designated could be read mistakenly as a "b."  In addition to the Power of Attorney forms, until 2003 Schwartz-Musin also occasionally represented clients before the IRS in violation of the 1987 order.  The IRS did not pursue sanctions against Schwartz-Musin about submission of these forms or appearances for clients until this case was filed; she has not filed Form 2848 since 2003.

In 2000, in this Court, Schwartz-Musin pled guilty to one count of Obstructing the Administration of Internal Revenue laws in violation of 26 U.S.C. 7212(a), *U. S. v. Musin*, No. 4:00-CR 66 (S.D. Iowa July 28, 2000).  She received a sentence of 90 days in a community corrections facility, five months of home confinement, and one year probation in addition to a $15,000 fine.  This plea agreement resolved an Indictment for 11 counts of obstructing the administration of Internal Revenue laws and four counts of willfully failing to file federal income tax returns for a corporation she operated.  The remaining 14 counts of the Indictment were dismissed as part of the plea agreement.

M_S Services, Inc., and SSC Services, Inc., are both corporations formed by Schwartz-Musin and Howard Musin for federal income tax preparation.  Howard Musin is President of both companies.  M_S Services was formed around 1997, to prepare returns previously done by Schwartz's Systems Corporation.  SSC Services, Inc., was formed in approximately 2002.  Howard Musin signs as the preparer for tax returns prepared by Schwartz-Musin and other M_S

Services and SSC Services employees.

For the 2008 tax year, Defendants Howard Musin and Schwartz-Musin estimated that they prepared over 900 returns for clients, about 65% for home-based businesses.  The record is unclear as to the number of different states in which Defendants' clients reside, or how widely Defendants advertise.  They do make some efforts to reach the home business market.  After 2002, Schwartz-Musin no longer signs returns as a preparer; Howard Musin signs returns she prepares, after checking them generally, which is permissible under IRS Code.

For the tax years from 2003 to 2006, the IRS audited 169 of the Defendants' clients' tax returns and maintains that it found errors in 168 of the returns.  However, the returns audited were not randomly selected for the three tax years, instead the IRS focused on returns most likely to result in disputed claims, and presented the auditors with a "project kit" with language for disallowing certain claims.  The auditor who reviewed all but one of the tax returns, Kathleen Roberts, only reviewed the returns, and taxpayer's documents, along with Defendants' worksheets used in preparation of the return, but not supplemental material provided later that resolved some of the disputed deductions.  Thus, the figures cited by the Government of 168 returns with errors out of 169 audits are not currently correct, as the Government has abandoned some of its original claims set forth in its Complaint.

Additionally, many of the taxpayers appealed the results of the audits, and on appeal, a significant number of cases were resolved favorably to the taxpayer.  The Government discounts these outcomes, noting that many cases are resolved on appeal in order to meet case processing demands.  Defendants calculate that after the final audits for seven taxpayers (16 returns), the $141,865.00 claimed due by the IRS for these taxpayers was reduced to $50,453.00.  Some taxpayers' cases are still on appeal.  The Court does not find that the IRS audit process or auditor

9

were biased, but notes the limitations presented by the procedures used, as well as the impact of evidence that developed after the field audits were completed by Ms. Roberts, reducing some taxpayers' audit assessments.  The audit process did reveal certain categories of expenses that the IRS continues to question, and which serve as the basis for the request for injunctive relief. The Government has not quantified the total amount of money it presently claims was fraudulently or deceptively unpaid in taxes as a result of any Defendant's actions in violation of §§ 6694 or 6695.

The process Defendants used to gather information and prepare the returns starts with a questionnaire completed by the client.  The tax preparer relies on the client's information provided, along with previous tax returns and answers to any follow-up questions that the preparer has for the taxpayer.  The preparer is entitled to rely upon the information provided by the client, and to take positions that may reduce the client's tax liability, as long as the position has a "realistic possibility of being sustained on the merits," as provided in 26 U. S. C. § 6694. Defendants argue that with the exception of a few returns on which there were data-entry or other types of errors, all returns they prepared included deductions made in consultation with their clients, and represent positions that had realistic possibilities of being sustained on the merits.  The IRS claims that the frequency and significant size of claims that are consistently disallowed made in returns prepared by Defendants demonstrate that they are interfering with the proper administration of the Internal Revenue laws, and should be enjoined from practice before the IRS and from preparing tax returns.

Specifically, the IRS disputes Defendants' approach to "write off your lifestyle" for home-based businesses (including expenses claimed by Defendant SSC Services on its returns), by taking, or advising clients to take, an aggressive approach to deductions for home office

space, personal expenses (including cleaning, childcare, travel, furnishings, college savings

plans, alarm systems, cell phones, mileage, homeowners' insurance, utilities, legal expenses and

kenneling a dog) and entertainment (including golf league membership, and a portion of

wedding reception expense).

Additionally, the IRS and Defendants hold divergent views on the appropriateness, and

extent to which, a taxpayer might deduct "image" expenses – grooming services and products for

those involved in the sale of cosmetics or health products.  Although the IRS advised Howard

Musin in 2003 that expenses for "street wear" clothing and personal make-up and hair-care were

not deductible, Defendants continued to claim "image" expenses on behalf of clients in the 2003

– 05 tax years, at times categorizing these under "laundry" or "advertising."  At the hearing,

Defendants testified that since 2007, they have no longer advised clients to claim "image"

expenses, nor do they claim them on any returns.  The IRS argues that the continued deductions

for "image" expenses after the 2003 advice about "street wear" demonstrate Defendants'

*scienter*, or willful failure to follow IRS rules and regulations.  Defendants maintain that the

discussions with the IRS about professional clothing allowances did not cover business-related

make-up and hair-care, and thus they were still justified in their belief that there was a realistic

possibility of these claims being sustained on the merits, as employees in certain industries such

as film and theater are at times allowed to write off hair and makeup expenses.

The extent of allowable rent expense for home offices is an additional category of

deduction that the IRS and Defendants view differently. The IRS  points to the similar amounts

claimed for rent included in several of the Defendants' clients' returns ($12,000, $18,000 or

$24,000), in addition to declarations from these clients, as proof that Schwartz-Musin actively

assisted in overstating these expenses, and that she has consistently overstated or misclaimed this

expense for her corporation, and for clients, over the past ten years. The IRS notes that in many of the audits, no rental agreement or other evidence of an arms-length transaction was found. However, in some instances there have been rental agreements, real estate comparable rates, or evidence of other similar home office deductions allowed when different tax preparers prepared the same clients' taxes. The issues relating to home office expenses, based upon the record at this time, do not establish a violation of § 6701.

The IRS also disputes expense claims made on behalf of DKD Enterprises, and Debra Dursky personally, for home-office rental and costs associated with breeding and showing cats, which the IRS deemed was Dursky's hobby and not actively engaged in for profit. Defendants and Dursky dispute the characterization of these cat breeding and showing expenses, and have appealed the disallowance of the $75,000 expense claim. Defendants note that a different tax-preparer submitted a return with similar expenses for DKD Enterprises.

While the Government has established a question about the authenticity of one of the 1099 forms submitted in support of the 2004 tax return for Shristi, Inc., there is not sufficient evidence to support a finding that this form was submitted to the IRS in violation of § 6695 by these Defendants. The Government also bases a § 6695 claim relating to Schwartz-Musin's submittal of Power of Attorney forms eight times between 2001-2003, where the forms may have indicated she was a CPA rather than an unenrolled return-preparer (no such forms post-2003 were submitted in evidence). Neither claim establishes that preliminary injunctive relief is appropriate.

After reviewing all of the evidence submitted at the hearing, and in support of the Government's Motion for Preliminary Injunction, the Court finds that a significant number of the IRS's claims have either been withdrawn, or reduced following additional responses to the

audits of the 2003 – 2006 tax returns for selected taxpayers.  Some taxpayers' claims, including those of Defendant SSC Services, Inc., are pending before the Tax Court, and based on nearly every other previous appeal, as this case progresses toward trial further reductions are likely in the amounts the IRS claim as § 6695 violations.

The Government claims that the public and the IRS are harmed because of the repeated audits the IRS is required to conduct in order to monitor, and attempt to control, Defendants' behavior.  The Government alleges that the repetitive nature of the errors, overstated expense claims, and unrealistic positions taken by Defendants in preparation of tax returns demonstrate that they are engaged in conduct subject to penalties under 26 U. S. C. §§ 6994(a), 6695(b) and 6701.

Applying the *Dataphase* analysis, the Court balances the equities of putting Defendants out of business pending trial on the merits, compared to some unknown amount of money that the Government maintains is due in unpaid taxes (which it can assess plus interest and penalties against the relevant taxpayers). The Court finds here, as in *Zerjav*, that the injury to the Government if the preliminary injunction is denied is outweighed by the certain injury to Defendants should the preliminary injunction be granted.  *See Zerjav*, No. 4:08CV00207 ERW, 2009 WL 912821, at *30-31. The balance of harms tips the analysis in favor of Defendants. Considering the issue of the likelihood that the Government will prevail on the merits, the Court finds for the reasons discussed above that the Government has not met its burden to show it has a "fair chance of prevailing" on the merits.  *See Oglala Sioux Tribe v. C & W Enterprises, Inc.*, 542 F.3d 224, 229 (8th Cir. 2008).  The public interest can still be protected by the ongoing investigation by the IRS.  After applying the *Dataphase* test to the record, the Court finds the

13

Government has not met its burden to establish it is entitled to a preliminary injunction.[1]

In light of the Report and Recommendation that the Government's Motion be denied, the

Court has not made specific findings as to specific actions taken by each defendant, which would

be required if the sweeping injunctive relief requested were to be granted, in order to tailor the

---

[1]Even under the test suggested by the Government as set forth in *Raymond*, 228 F.3d 804 at 813, the results would be the same.  Incorporating the analysis detailed above, the Court has considered the evidence and finds:

a) *Gravity of harm:* While there are some back taxes that have been assessed as a result of the audits, neither the scope, nor the amount indicate grave harm to the United States, particularly in comparison to the harm resulting to Defendants if their businesses are closed;

b) *Extent of Defendants' participation and degree of scienter:* The primary Defendants are Howard Musin and Jill Schwartz-Musin.  Evidence as to the actions of other Defendants was slight.  The deductions claimed were all based upon information from clients, or developed with the clients' understanding of deductions claimed.  This is in contrast to other cases relied upon by the Government for issuance of a preliminary injunction, where the tax preparer never showed the taxpayer the deductions taken, or claimed expenses under theories that the IRS and Tax Courts had consistently disallowed.  In the majority of deductions claimed either for themselves, or other taxpayers, Defendants believed they had a realistic probability of success on the merits.

c) *Isolated or recurrent nature of infraction:* The IRS established that Defendants consistently advise clients to take an aggressive stance regarding business expense deductions. Many of the Government's assertions of egregious infractions, however, have been rebutted by Defendants and subsequently abandoned by the Government.   On this record, and at this stage of the proceeding, the Court cannot find that errors or statutory violations are more than isolated instances.

d) *Recognition of culpability and sincerity of assurance against future violations:* In light of discussions with the IRS, Defendants have ceased using "image" deductions since 2007. Defendant Schwartz-Musin has not signed returns since 2002, and since 2003, has not submitted Form 2848 or represented clients before the IRS.  Defendants did admit to math or scrivener's errors on several returns, and taxes have been paid on those amounts. The other areas of concern raised by the IRS are currently the subject of litigation in the Tax Court.  Considering this history, the Government has not established that Defendants deny culpability for past mistakes or are insincere in assuring against future violations.

The Government's case does not support a preliminary injunction.  The record shows that while the initial audits of targeted taxpayers do demonstrate the need for further investigation, on this record, it cannot be said that the gravity of the harm is extensive, that the infractions are not isolated (in light of the few number of returns audited in proportion to the overall number returns prepared by Defendants), or that Defendants deny culpability or do not have a sincere belief that the positions taken on clients' returns could be reasonably sustained on the merits.

14

injunction to the actions of each defendant.  For example, other than being operated by Jill Schwartz-Musin, the Government has not established what actions M_S Services and Schwartz's Systems Corp., took other than in relation to their own tax returns.

## RECOMMENDATION AND ORDER

IT IS RESPECTFULLY RECOMMENDED, under 28 U.S.C. § 636(b)(1)(B) that Plaintiff's Motion for Preliminary Injunction (Clerk's No. 2) be denied.

IT IS ORDERED that the parties have until September 4, 2009, to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Wade for Robinson v. Callahan*, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). The Court will freely grant such extensions. Any objections filed must identify the specific portion of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed. R. Civ. P. 72; *Thompson*, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. *Leonard v. Dorsey & Whitney*, 553 F.3d 609, 620 (2009); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994); *Halpin v. Shalala*, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); *Thompson*, 897 F.2d at 357.

IT IS SO ORDERED.

Dated this 20th day of August, 2009.

CELESTE F. BREMER
UNITED STATES MAGISTRATE JUDGE

15