IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil No.: <u>4:09-CV-00062-JAJ-CFB</u> |
| Plaintiff/Counterclaim Defendant, | |
| v. | |
| HOWARD MUSIN, JILL SCHWARTZ-MUSIN, SSC SERVICES, INC., M-S SERVICES, INC., SCHWARTZ'S SYSTEMS CORPORATION | BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL |
| Defendants/Counterclaim Plaintiffs. | |

## TABLE OF CONTENTS:

STATEMENT OF FACTS .............................................................................................. 1

THE UNITED STATES' CLAIM .................................................................................... 2

ANALYSIS OF THE UNITED STATES' RESPONSES TO INTERROGATORIES ................ 4

    INTERROGATORIES 10 and 11 ............................................................................. 8

    INTERROGATORY 12 ............................................................................................. 10

    INTERROGATORY 13 ............................................................................................. 12

    INTERROGATORY 14 ............................................................................................. 13

    INTERROGATORIES 16 and 17 ............................................................................. 13

    INTERROGATORIES 18 and 19 ............................................................................. 15

IMPROPER VERIFICATION ......................................................................................... 16

SUMMARY ................................................................................................................... 17

CERTIFICATE OF SERVICE ........................................................................................ 19

**COME NOW** the Defendants and request that the Court, pursuant to Rule 37 of the Federal Rules of Civil Procedure, compel the United States to fully answer the Defendants' Second Set of Interrogatories. Specifically, Defendants request that the Court compel complete responses to Interrogatories 10, 11, 12, 13, 14, 16, 17, 18, and 19.

STATEMENT OF FACTS

The Defendants propounded their first set of interrogatories to the United States on September 30, 2009. Those first nine (9) interrogatories requested that the United States identify specific instances in which the Defendants engaged in the conduct that was complained about in the Complaint filed by the United States. For example, Interrogatory No. 1 requested that the United States "identify each and every instance in which you claim that the Defendants, or any one of the Defendants, overstated, fraudulently or otherwise, rent expense and/or other business-use-of-the-home deductions as generally alleged in paragraphs 19 through 21 of your Complaint." Interrogatory No. 2 asked that the United States "identify each and every instance in which you claim that the Defendants, or any one of the Defendants, overstated, fraudulently or otherwise, the value of any other business expense deductions as referenced generally in paragraphs 22 through 24 of your Complaint." Similarly, Interrogatories 3 through 9 reference the remaining claims set forth in the Complaint. On November 2, 2009, the United States responded to the first set of interrogatories and identified approximately 350 "instances".

On January 14, 2010, Defendants served their second set of interrogatories (Interrogatories 10 through 22) on the United States. Generally, those interrogatories requested more detailed information regarding the "instances" identified by the United States in response to Interrogatories 1 through 9. The United States responded to that second set of interrogatories on March 3, 2010. The Defendants did not consider those responses to be adequate, and on

-1-

March 10, 2010, served a Notice of Deposition on the United States regarding a "Rule 30(b)(6)" deposition of a United States designee regarding the claims made in the Complaint. The United States requested a protective order and sought to quash the deposition. The Court granted the United States' motion on April 23, 2010, but noted the Defendants' complaints regarding the lack of sufficiency in the Government's responses to interrogatories and directed counsel to "meet and confer to attempt to resolve or narrow the disputes regarding the adequacy of any answers to discovery." See Order, Dkt. 104.  Counsel did have a lengthy telephone conversation on April 28, 2010, to discuss the responses. Following that discussion, the United States initially refused to provide more detail to its discovery responses. However, the next day (April 29, 2010), counsel for the United States stated that they had reconsidered and would be supplementing the interrogatory responses.

Nearly three weeks later, on May 18, 2010, the United States submitted its Third Amended Response to Defendants' Interrogatories. Counsel subsequently conferred further regarding the responses, the United States has indicated that it believes that its responses as set forth in the Third Amended Response are adequate and it does not intend to expand further on its responses.

The Court should also note that the amended responses of the United States to the interrogatories submitted on April 8, 2010, April 26, 2010, and May 18, 2010, increase the total number of "instances" to well over 700.

## THE UNITED STATES' CLAIM

In order to put the discovery dispute in its proper context, it is appropriate to briefly review the claims that the United States has made in this matter. The United States seeks a permanent injunction prohibiting the Defendants from preparing tax returns. As a prerequisite to

-2-

obtaining the injunction, the United States must prove that there has been violations of 26 U.S.C. §6694, 26 U.S.C. §6695, or 26 U.S.C. §6701. The great majority of the instances identified by the United States relate to deductions alleged to have been claimed in violation of 26 U.S.C. §6694. As a general matter, prior to May 25, 2007, a tax preparer violated 26 U.S.C. §6694 if they took an "unrealistic position" on a tax return. An "unrealistic position" was one which did not have a "reasonable possibility of being sustained on the merits". A position was considered to have a realistic possibility of being sustained on its merits if a reasonable and well informed analysis by a person knowledgeable in tax law would lead such a person to conclude that the position has approximately a one in three, or greater, likelihood of being sustained on its merits..." Regulation §1.6694-2(b)(1). After May 25, 2007, the standard was changed to require a "reasonable belief that the position would more likely than not be sustained on its merits". This new standard basically requires that the position has a greater than 50 percent likelihood of being sustained on its merits. With respect to either standard, a tax return preparer is entitled to rely, without verification, upon information or advice furnished by a taxpayer, advisor, another tax return preparer, or other party.

Where, as here, the great majority of the instances identified by the United States relate to deductions claimed on client tax returns, the United States will need to establish that at the time the deduction was claimed the Defendants did not meet the applicable standard. Whether the Defendants acted improperly in claiming a deduction involves an analysis with respect to each "instance" as to the applicable law (and relevant authority available at the time the deduction was claimed), and the information or facts known to the return preparer at the time the deduction was claimed. It is not enough for the United States to claim that the deductions should not be allowed. The United States must establish that based upon the facts the Defendants knew (or

should have known) that it was improper to claim the deduction in each instance. For that reason Defendants have requested that the United States set forth (1) the specific conduct it alleges each Defendant engaged in with respect to each instance (Interrogatories 10 and 11), (2)the specific conduct it alleges Defendants' clients engaged in with respect to each instance (Interrogatory 12), the factual and legal basis for any claim that a deduction was overstated or otherwise improperly deducted (Interrogatories 13 and 14), the factual and legal basis for any claim that a deduction was not a business expense (Interrogatories 16 and 17), and the date and manner in which the Defendants became aware of the facts that the United States relies upon as a basis for claiming that the deductions were improper (Interrogatories 18 and 19). As set forth below, the United States has not fully responded to the Defendants' Interrogatories.

## ANALYSIS OF THE UNITED STATES' RESPONSES TO INTERROGATORIES

Given the large number of instances identified by the United States, it would be difficult and somewhat redundant to require the Defendants to set forth with respect to each and every "instance" the specific deficiencies in the response. Accordingly, in order to demonstrate the deficiencies in the Government's responses the Defendants have identified thirteen "instances" that demonstrate the deficiencies in the United States' responses. Those instances and the related explanation provided by the United States are:

|    | Taxpayer | Type of Return | Year | Amount Claimed | Explanation: |
|----|----------|----------------|------|----------------|--------------|
| A. | G & M Nelson | Form 1065 | 2003 | $24,000 | The deduction was without economic justification and was taken simply as tax planning. |
| B. | James & Melody Graham Ptnrs | Form 1065 | 2003 | $36,000 | Defendants claimed $36,000 on the return. (AF06204-AF06224.) |

| | | | | | |
|---|---|---|---|---|---|
| C. | Becker & Chaney Assoc. | Form 1065 | 2005 | 12,000 | Customer reported $12,000 in rent expense (CF09446; CF09466), which Defendants deducted on the return.  The 2005 Form 1065 was prepared by SSC Services.  The Tax Court disallowed this rent deduction for lack of economic substance.  Defendants could not have reasonably believed that a partnership consisting of a husband and wife was required to pay that husband and wife $1000 per month to occupy their home. |
| D. | Gerdes Group, LLC | Form 1065 | 2008 | $12,000 | Gerdes reported that his company paid him $36,000 for rent in 2008.  He claimed that $12,000 of this amount was for rent of office equipment in his home.  This self-rental for the automobile and the equipment lacked economic substance and was designed to shield Gerdes' earnings from self-employment taxes.  As an indication that this "rental" lacked economic substance, Gerdes Group claimed a depreciation deduction on the same equipment it was purportedly renting. |

| | Taxpayer | Type of Return | Year | Category | Amount Claimed: | Explanation |
|---|---|---|---|---|---|---|
| E. | Bayer, Elijohu & Rivka | 2003 | 1040 | COGS | $22,532 | Bayer reported making purchases of $22,532.25 in her nutritional sales business in 2003.  She reported selling $9,739, using $5,000, and giving $2,000 to her mother.  She also reported returns of $60.55. (CF13442.)  On the Schedule C, Defendants report $22,532 for COGS. Since Bayer only sold $9,739 worth of product, her cost of goods sold for 2003 should have been lower to reflect the value of the product actually sold.  This deduction includes product remaining in inventory at year end as well as product personally used. |

| | | | | | | |
|---|---|---|---|---|---|---|
| F. | ABS Associates | 2006 | 1040 | Supplies | $2,878 | Tax Information for Schedule C form produced under subpoena has the following notation on the top: "See QB report for totals on blank lines." The line for supplies: "add to QB total 541.44 from Shaklee purchase orders." Miscellaneous category of QB report on pages 12 &13 is $2,337.39. It includes purchases for dress shoes and chairs.  These two numbers are added to 2,878 on the Defendants' input sheets, (CF02697), and this amount is claimed on the return.  The amount deducted includes personal expenses.  If the chairs were business assets, they should have been depreciated rather than deducted. |
| G. | Coogan & Associates | 2004 | 1065 | Supplies | $10,359 | Coogan reported an expense for "Demos/Samples" of $1365.90, (SD16366-SD16367), and for "Training Aids & Expenses" of $2992.82. (SD16382.)  Under Supplies, "sales aids 2993 + demos 1366 . . . 4359." (CF34169.)  Exactly $6,000  more than this amount, or $10,359, was deducted on the return. |

*Interrogatory #3:*

| | Taxpayer | Type of Return | Year | Category | Amount Claimed: | Explanation |
|---|---|---|---|---|---|---|
| H. | Birkett, Dan | 1040 | 2008 | Cell Phone | $540 | |
| I. | Bolton, Jeffrey | 1040 | 2008 | Laundry | $208 | |
| J. | Nolan Enterprises | 1065 | 2004 | Meeting Expenses | $3,292 | 2004 1065 tax return includes a deduction for conventions and meetings in the amount of $3,292 and was prepared by SSC Services, Inc., and is signed by Howard Musin. 2004 1065 tax return was prepared by SSC Services, Inc. and is signed by |

| | | | | | | Howard Musin. SSC input sheet lists the following for conventions and meetings "1354+1264+674=3292." Page 29 of customer's expense information contained in the customer file, lists the total for refreshments as 1353.65.All entries are for BevMax, a liquor store. Page 19 of customer's expenses information contained in the customer file, lists the total for meetings and refreshments as 1263.71. Page 18 of customer's expense information lists the total for meeting expenses as 674.19. Defendant(s) prepared and filed a federal income tax return claiming personal expenses with meeting expenses/and or including meal expenses without limiting by 50%. |
| --- | --- | --- | --- | --- | --- | --- |
| K. | Nolan Enterprises | 1065 | 2004 | Advertising and Promotion | $3,629 | 2004 1065 tax return includes a deduction for advertising in the amount of $3,629 and was prepared by SSC Services, Inc., and is signed by Howard Musin. SSC input sheet lists the following under advertising and promotion: "jm 420+617+1395+646+551=3629." Pages 7 and 8 of the customer's expense information, included in the defendants' customer file, totals $420.00 for haircut/style, page 8 business gifts total is $1395.21.The total for clothing allowance on page 9 is $616.91, and includes personal clothes of Kevin and Loretta, as well as makeup from Nordstrom. The total for promotion is $645.66 on page 24. Defendant(s) prepared and filed federal income tax return claiming an advertising deduction that included |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | non-deductible personal expenses, including $617 of expenses attributable to clothes and $420 attributable to haircuts and $1396 of business gifts, many of which exceed $25. |
| L. | Keith & Jean Patterson | 1040 | 2006 | Schedule E Expenses | $4,926 | 2006 1040 Schedule E lists total expenses of 4,926.  2006 1040 was prepared by defendant(s). Defendant(s) prepared and filed federal income tax return claiming schedule E expenses although expenses did not arise from a bona fide rental |
| M. | Kristalite Imports | 1065 | 2004 | Conventions and meetings | $3,403 | Customer's P&L shows a "Traing, Sem,Trav" expense of $3,403.43. (Subpoenaed documents). Defendants deducted this amount on the return.  The customer's transaction list by vendor shows that purchases deducted as conventions and meetings expenses were made at Claim Jumper (a restaurant), Highland Lanes, Lenox, and Sea World.  At a minimum only 50% of the expenses should have been deducted as entertainment, but given the nature of the expenditures these are likely personal, non-business expenditures. (Subpoenaed documents) |

## INTERROGATORIES 10 and 11

In Interrogatory 10 Defendants requested that the United States identify which Defendant or Defendants were involved in each instance. In Interrogatory 11 Defendants asked the United States to detail the specific conduct or involvement of each Defendant with respect to each "instance".  The United States' responses, set forth in Exhibit A to the Motion to Compel,

basically stated that SSC Services, Inc. was listed as the return preparer, but in most cases Howard Musin prepared the federal income tax returns, and Jill Schwartz-Musin and Howard Musin performed preliminary work on returns. Defendants do not believe that these responses are directly responsive to the specific questions asked.

Because each Defendant should be judged separately, it is appropriate to ask about the specifics of the alleged conduct of each Defendant with respect to each instance. For example, with respect to the G & M Nelson rent deduction of $24,000 in 2003 (Instance A above), there are issues regarding the conduct of the Defendants that remain unanswered. The United States claims with respect to the rent deductions identified in response to Interrogatory 1 that "the Defendants or one of the Defendants arbitrarily determined the amount of rent." See response to Interrogatory 13, Exhibit A; see also the United States response to Interrogatory 15, id. Despite these allegations, the United States has not identified which Defendant(s) it alleges "arbitrarily" determined the amount of rent deducted by G & M Nelson in 2003. Certainly with respect to all instances with respect to which they believe that "the Defendants, or one of the Defendants, arbitrarily determined the rent amount, the United States should be able to identify which Defendant they allege determined the rent amount.

Expanding beyond the instances described in response to Interrogatory 1, we can look to the instance identified with respect to the Bayer 2003 1040 (Instance E above). There, the United States complains about the cost of goods sold deduction claimed. The explanation given is that "on the Schedule C, Defendants report $22,532.00 for COGS". Again, United States should specify exactly which Defendant or Defendants it alleges engaged in the specific conduct it allege to be improper. Similarly, on the 2006 supplies expense claimed with respect to the ABS Associates Form 1040 (Instance F above), the United States never specifically identifies which

Defendant(s) are involved nor the specific conduct of each Defendant.

In discussions with counsel for the United States, the general response of the United States to our request for more information regarding the specific identity of the Defendants involved with respect to each instance is the United States' claim that "your clients knew what they did". That response misses the mark in two (2) ways. First, it is clearly not a proper objection to a discovery request that the other party already has the information. However, courts have unambiguously stated that such an objection is insufficient to resist discovery requests. See *St. Paul Reinsurance Company, Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 514 (N.D. Iowa 2000). Second, and more importantly, while the Defendants' know what they did do, they do not necessarily know what exactly the United States alleges that they did – and they are entitled to know those allegations so that they can prepare to present contrary evidence as necessary.

In summary, Defendants asked the United States to identify the specific conduct the United States alleges each Defendant engaged in with respect to each instance. The United States has neither objected to nor responded fully to the interrogatories making that request. The Court should compel the United States to respond fully and completely to Interrogatories 10 and 11.

## INTERROGATORY 12

At Interrogatory 12 the Defendants asked the United States to set forth in detail the specific conduct or involvement they contend or allege that the taxpayers (Defendants' clients) engaged in with respect to each such instance.

The United States' answer, generally, is that customers provided their expense information to one of the Defendants or one of the Defendants' employees or independent

contractors close in time to when Defendants prepared the return. That response is clearly lacking in many instances in which the United States has asserted penalties against the taxpayer clients. In those situations, the United States clearly asserts that the taxpayers themselves engaged in conduct subject to penalty, and they should identify that conduct with respect to each such instance.

More specifically, for example, with respect to G & M Nelson's rent deduction for 2003 (Instance A above), Gordon Nelson testified in his deposition that the amount of rent was based on a realistic figure to run a space to run the Shaklee business in some place other than their home, and when asked "who determined that figure" Mr. Nelson responded "I think there was a conversation between Marleen and Jill". The Defendants are entitled to know what specific conduct the United States believes was engaged in by the Nelsons with respect to the rent deduction.

With respect to the ABS Associates' 2006 supplies deduction of $2,878.00 (Instance F above), the allegations are that the deduction included purchases of dress shoes and chairs. The United States obviously contends that the clients (Bruns) categorized those expenses as miscellaneous business expenses. The IRS imposed penalties on the Bruns for their conduct. Certainly the United States should be able to identify the specific conduct of Mr. and Mrs. Bruns that led to the imposition of penalties.

Because tax preparers such as the Defendants are entitled to rely on information provided by clients, it is important to understand the specific conduct of each client with respect to each instance. If a client gave inaccurate information to the Defendants, the Defendants are nonetheless entitled to rely upon that information, and do not violate 26 U.S.C. §6694 by claiming a deduction based on that information. The court should compel the United States to

fully respond to Interrogatory 12.

## INTERROGATORY 13

At Interrogatory 13, Defendants asked that the United States "detail the factual basis for your contention(s) that the claimed deduction was overstated, or otherwise improperly deducted." The United States claims that the factual basis for their contentions that a deduction was overstated or otherwise improperly deducted was supplied in their responses to Interrogatories 1 through 9. A review of the United States responses clearly shows that claim to be false with respect to many instances. For example, with respect to Instance H referenced earlier in this brief, the United States identified a cell phone deduction on the 2008 tax return of Dan Birkett, but no explanation is provided in the response to Interrogatory 3 (so there is absolutely no response to Interrogatory 13 with respect to that instance). The same is true with respect to the 2008 laundry expense claimed by Jeffery Bolton (Instance I).

Other deficiencies exist. With respect to Interrogatory 1, Interrogatory 13 further states that "in many cases, the Defendants or one of the Defendants arbitrarily determined the amount of rent". However, the United States never identifies in which cases a Defendant is alleged to have arbitrarily determined the amount of rent. The United States also claims "in many cases, there was no rental agreement or lease." Again, the United States fails to identity those specific cases. Each instance is factually different, and the United States should set forth the factual basis for the allegations relating to each instance.

Generalized claims, such as that "in many cases, the Defendants or one of the Defendants arbitrarily determined the amount of rent" or that "in many cases, there was no rental agreement or lease", are not responsive to the Defendants' inquiry. The Court should compel the United States to fully and completely respond to Interrogatory 13, specifically identifying its claims with

-12-

respect to each of the 700 instances.

## INTERROGATORY 14

At Interrogatory 14, the Defendants requested that the United States identify the legal basis for its contentions that claimed deduction were overstated or otherwise improperly deducted. The United States objected to that interrogatory.  The objection is improper.  Fed R. Civ. P. 33(a)(2) clearly provides that an interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact, or the application of law to fact.  Interrogatory 14 simply asked the United States to apply the tax law to the alleged facts and state why the deductions claimed by the Defendants are not allowable.

As discussed above, the United States must, with respect to the claimed violations of 26 U.S.C. §6694, establish that there is no substantial authority for the claimed deduction. It is relevant and proper for the Defendants to inquire as to the United States interpretation of the underlying tax law, particularly in situations where there is conflicting authority.  The Court should overrule the United States' objection, and compel the United States to provide the legal basis for its claims that the Defendants acted improperly in claiming the deductions identified in response to Interrogatories 1 – 9.

## INTERROGATORIES 16 and 17

The Defendants asked that the United States set forth the factual basis (Interrogatory 16) and legal basis (Interrogatory 17) for their contentions that a deduction was not a proper business expense. The initial response of the United States is that "the factual basis of the United States responses is set forth in the responses to Interrogatories 1 through 9".  The United States objected to Interrogatory 17.   For the same reasons as discussed above with respect to Interrogatory 14, the United States' objection to Interrogatory 17 should be overruled, and the

Court should require that the United States respond to that interrogatory.

Even where more detailed explanations have been given, careful analysis shows the responses to be vague and insufficient.  For example, the United States claims that the cost of goods sold deduction claimed with respect to Elijahu and Rivka Bayer in 2003 (Instance E above) is excessive.  Part of the United States explanation is that "since Bayer only sold $9,739 worth of product, her cost of goods sold for 2003 should have been lower…".  That explanation fails to recognize, however, that the sales actually reported on the Bayer's 2003 1040 was $22,941, not $9,739.  This forces the Defendants to speculate as to the response. Has the United States simply made another error?  Does the United States contend that it is legally improper to reflect product withdrawn for personal use as "COGS" when the value of that product is reported as additional sales?  Does the United States contend that the sales amount does not reflect the value of the personal product withdrawn?  What is the basis for the United States' claim that "this deduction includes product remaining in inventory at year end…" – the United States never makes any allegation or claim that some of the product remained on hand at year end.

With respect to the supplies expense for ABS Associates for 2006 (Instance F above), the Defendants' file (which has been produced to the United States) does not contain a detailed "QB" report showing the makeup of the $2,337.39 of miscellaneous expenses. The Defendants believe that the report referenced in the United States explanation was the copy of a report provided to the United States by the Bruns pursuant to subpoena.  Since the Defendants' file only contains a profit and loss statement that shows miscellaneous expense of $2,337.39, the issue becomes whether it is the United States contention that the Defendants knew more than their file reflects? Specifically, does the United States contend that the Defendants had a duty to look behind the profit and loss statement, and to affirmatively seek out more detail? (See discussion of

-14-

Interrogatories 18 and 19 below.)

With respect to the 2004 supplies expense claimed on the Coogan & Associates 2004 form 1065 (Instance G above), similar issues are raised. The $6,000.00 additional supplies expense was reallocated from purchases of product to supplies. As the Defendants explained in the preliminary injunction hearing, the Shaklee clients include all purchase from Shaklee in the purchases category, and that includes membership kits and marketing materials used to recruit new "downline" distributors. Defendants routinely reclassified some of those purchases as supplies, as they did in this case. Does the United States contend that the reallocation was factually inaccurate? Does it contend that the reallocation was legally improper? Or does the United States simply believe that the $6,000.00 was "made up" or "fabricated"?

In summary, each "instance" is unique. The Defendants are entitled to know if and why the United States believes that each Defendant acted improperly in claiming the deduction identified in each "instance". Interrogatories 16 and 17 should, as requested by the Defendants, be answered specifically as to each instance identified by the United States, so that the issues in this case are clearly identified prior to trial.

## INTERROGATORIES 18 and 19

As explained above, the Defendants are entitled to rely, without verification, on information provided by their clients. Accordingly, the real issue before the Court in this case is not whether the deductions claimed on the returns prepared by the Defendants are ultimately allowed to the Defendants clients, but whether the Defendants acted improperly in claiming the deductions in the first place. It is not enough to allege and establish that the claimed deductions should be disallowed, the United States must allege and establish that the Defendants took an "unreasonable position" with respect to the deduction. This, in turn, requires an inquiry into

-15-

what facts were actually known to the Defendants (and possibly what fact should have been known to them) at the time the deduction was claimed.

In Interrogatories 18 and 19 the Defendants asked that the United States set forth, with respect to each instance, the date that the United States believes that the Defendants became aware of the facts supporting the United States claims that the deduction was improper, and furthermore that the United States identify the manner in which Defendants became aware of those facts. The United States response, that the "Defendants knew or should have known of these facts before or at the time of preparing the federal income tax returns of the clients specified in Plaintiff's responses to Interrogatories 1 through 9...", is clearly unresponsive and vague. Both Interrogatory 18 and 19 are straight forward, and the Court should compel the United States to give a full and complete response to each question, even if the response in many cases is "we don't know".

## IMPROPER VERIFICATION

The United States initial response to interrogatories 1 - 9 was verified by Jean Lane, an IRS employee, but only to the best of her own personal knowledge. The subsequent responses to interrogatories, including all amended and restated responses, have been verified by Robert Fay, one of the United States' attorneys in this action. The verifications signed by Mr. Fay, in the form of the verification at page 17 of Exhibit A, state "Based upon the facts contained in the plaintiffs files pertinent to this action, the foregoing responses are true and correct to the best of my knowledge, information and belief". While it is clear that in appropriate circumstances an attorney for an organization may sign interrogatories on behalf of the organization (see, *Deseret Management Corporation v. US*, 75 Fed.Cl. 571, 572-573 (2007)), in doing so, the attorney's answers are not limited to his or her personal knowledge, but must reflect the information

available to the organization (in this case the United States). *Id*. at 573-574. Accordingly, adding the qualifier "to the best of my knowledge" inappropriately shifts the focus from the information available to the organization to the personal knowledge of the respondent (in this case Ms. Lane and Mr. Fay). Id. at 575. Similarly, limiting the scope of the response information contained in certain unidentified files "pertinent to this action" further improperly limits the response, which is supposed to reflect all of "the information available to the party", not just the limited information contained in the unidentified files "pertinent to this action". Fed. R. Civ. P. 33(b)(1)(B).

## SUMMARY

Discovery in this matter has been difficult. The United States has objected to the Defendants' attempts to take a Rule 30(b)(6) deposition regarding the United States claims, stating that the Defendants must establish that the interrogatory process is deficient before they can seek a Rule 30(b)(6) for contention discovery. The United States then refuses to give complete and detailed answers to the interrogatories, forcing the Defendants to spend additional time and resources seeking a motion to compel. The United States cannot have it both ways – to the extent they claim that the Rule 30(b)(6) deposition is merely duplicative of the information requested in the interrogatories, they need to fully respond to those interrogatories, including properly verifying the answers. Clearly the Defendants are entitled to know exactly what the United States claims they did that warrants imposition of a permanent injunction prohibiting them from continuing their business. The Defendants should not have to guess at what the United States is asserting as the basis for their injunction. The United States needs to be clear as to the specific conduct of each Defendant with respect to each of the over 700 instances identified to date so that the Defendants can be prepared to refute the United States' allegations

at trial in this matter.

The Court should compel the United States to respond fully and completely to Interrogatories 10, 11, 12, 13, 14, 16, 17, 18, and 19, separately identifying the response with respect to each of the over 700 "instances" identified by the United States in response to Interrogatories 1 through 9.

Respectfully submitted,

Ronald L. Mountsier
SCHNEIDER, STILES, SERANGELI & MOUNTSIER, P.C.
604 Locust, Suite 1000
Des Moines, IA 50309
Phone: 515-245-6789
Fax:  515-244-1328
Email:  rmountsier@sssmlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2010, a true and accurate copy of the foregoing was filed via the court's ECF System, which will provide notice electronically to Robert E. Fay, Esq., Ann Reid, Geoffrey J. Klimas, Esq., Daniel J. Healy, Esq. and Miranda Bureau.

Mr. Robert E. Fay
Trial Attorney, Tax Division
U.S. Dept. of Justice, PO Box 7238
Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 305-9209
Fax: (202) 514-6770
Email: robert.e.fay@usdoj.gov

Ms. Ann C. Reid
Trial Attorney, Tax Division
U.S. Dept. of Justice
PO Box 7238, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 514-6636
Fax: (202) 514-6770
Email: ann.carroll.reid@usdoj.gov

Mr. Daniel J. Healy
U.S. Dept. of Justice, Tax Division
PO Box 227, Ben Franklin Station
Washington, D.C. 20044
Phone (202) 307-6346
Fax: (202) 514-6866
Email: Daniel.J.Healy@usdoj.gov

Mr. Geoffrey J. Klimas
U.S. Dept. of Justice, Tax Division
PO Box 227, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 307-6346
Fax: (202) 514-6866
Email: Geoffrey.J.Klimas@usdoj.gov

Ms. Miranda Bureau
Trial Attorney, Tax Division
U.S. Dept. of Justice
PO Box 7238
Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 353-9171
Fax: (202) 414-6770
Email: Miranda.J.Bureau@usdoj.gov